Bissell, P. J.,
delivered the opinion of the court.
The bill which Martin filed against Barth and Dick attacked the sale which was made under a trust deed wherein Dick was named as the trustee. In 1890, Martin was the owner of certain property in Huerfano county, and in May conveyed it to Dick to secure the payment of sundry debts which he owed. The debts were not paid at maturity, and Dick as trustee, at the request of the holders of the notes, proceeded to advertise the property for sale, and sold it on the 21st of March, 1891. The amount of the debt secured by the original conveyance was about seventeen thousand dollars. In addition Martin owed a large sum of money to the defendant Barth. There are quite a number of details about these various transactions, and relating to other collaterals held by the creditors, which may be left entirely unnoticed. The grounds on which the plaintiff based his right to relief were deduced from the circumstances of the sale, the price at which the property was bid off, and the facts about a tender of the sum due, which he claimed to have made. This disposes of all necessity to consider any other matters than those touching these three several grounds. The question of the tender is easily disposed of, since the court below found as a matter of fact that Martin never made any tender. If we were not concluded by this finding of the trial court, and had the right to review the testimony, we could not disturb it *348 because there is no evidence which supports the plaintiff’s contention concerning it. The attack on the sale which depends for its success on the proof of a departure from the power contained in the instrument is about as easily disposed of. According to the terms of the deed, the trustees were empowered to sell the property at the front door of the court house of Huerfano county, town of Walsenburg. The sale was made at the door which led into the county clerk and recorder’s office. A description of the court house and its locus very clearly exhibits the entire want of force of the appellant’s contention in this particular. The court house is situated in a yard about thirty feet from the street, and has an open space on either side of it. It has a fifty foot frontage on Fifth street. In this Fifth street frontage there are three doors ; the middle one is the entrance to the court room, the one to the west goes to the office of the clerk and recorder, and the one to the east to the clerk of the county court. These doors are about sixteen feet apart. When the trustee made the sale, he stood on the steps leading to the county clerk and recorder’s office, and sold the property in a public manner, and in such a way that he Was plainly and easily heard by all persons attending the sale as well as by any passers by on the street. The appellant’s theory is, that when the power conferred upon the trustees in terms provided that the property should be sold at the front door of the court house, it must be interpreted to mean the door leading into the court room, and a sale made at any other door, even though upon the same side of the building, and under such circumstances as those which surround this transaction would render the sale invalid and void. There is no legal warrant for this contention. The property was sold at the court house, at a front door of the court house, and, so far as can be determined from reference to the instrument, from the door contemplated by the parties. In any event, where it is plain to be seen that the purposes of the parties have been accomplished and the sale has been fairly made, at a door of the building on the side named in the power, *349 and in full view of every other door on the side described, it must be true that the deviation, if it be one, is not of the sort which will justify upsetting an otherwise valid and regular act. 2 Pingrey oh Mortgages, § 1363; Hickey v. Behrens, 75 Tex. 488.
The only remaining consideration is that which relates to the price at which the property was bid in by Barth, who was evidently seeking to protect his interests under the junior security. The resolution of this question is sometimes very difficult, for the reason that the authorities on the subject are exceedingly scarce, and the cases are very rare in which courts have set aside sales of this sort because the consideration paid was inadequate. The basis of the rule is well understood, and all the decisions on the subject are gathered in works on equity under the general head of constructive fraud. The general doctrine is, that where there are no other inequitable incidents which furnish a basis for the decree, it will not be entered because the price is inadequate, unless the case very clearly demonstrates that the difference between the value of the property and the price that it brought is such as to shock the judgment and conscience of the chancellor. 2 Pom. Equity Jurisprudence, § 927.
We are unable to see that the trial court erred in its judgment respecting this matter. According to the evidence of Martin, the difference between the value and the price was so wide as to bring the controversy within the operation of this salutary principle. The trouble, however, is that when the entire proof on this subject is examined the difference of opinion amongst the witnesses is so great that we are unable to say that the plaintiff maintained his case on this proposition. The value of the land was not easily demonstrable as would be the value of property situated in a town, or of land valuable solely for agricultural or some other well known purposes. In ordinary cases, the market price of property in any vicinity, and the use to which it may be put, very easily determines the value. In this instance, the value which the plaintiff and his witnesses put upon the land was dependent *350 upon another consideration, to wit: its character as coal ■land. Coal had been found adjacent to the property and mines had been opened up, and wherever a valuable vein of coal had been opened the price of the property correspondingly increased. Had it been established that this land contained coal, as Martin contended it did, the value which'he put on it might not have been unreasonable, and the difference between the value and the selling price would have been so great as probably to necessitate an order of resale. The evidence does not establish this fact. Whether there was any coal under the land is purely a matter of conjecture, and rests on opinions deduced from its situation, and not provable from anjr openings on it, or immediately contiguous to it. It is simply supposed to be coal lands. If the lands be valuable for coal, and if they have a water right, they are worth one sum — if without one, or either, or both, they are of another value, and the price they brought was entirely adequate. Since the court found with the appellees and purchasers in respect of these matters, and we'are unable clearly and definitely to satisfy ourselves that he was mistaken in this regard, we cannot disturb the judgment.
The trial court committed no error which permits us to disturb the judgment, and it will accordingly be affirmed.

Affirmed.